---

**THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| **RED CAT HOLDINGS, INC. and TEAL DRONES, INC.,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiffs,** | **Case No. 2:25-cv-00646-TS-JCB** |
| **v.** | |
| **GEORGE MATUS and VECTOR DEFENSE, INC.,** | **District Judge Ted Stewart** |
| **Defendants.** | **Magistrate Judge Jared C. Bennett** |

This case is referred to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(A).[1] Before the court is Plaintiffs Red Cat Holdings, Inc. ("Red Cat") and Teal Drones, Inc.'s ("Teal") (collectively, "Plaintiffs") motion for expedited discovery.[2] The court held oral argument on the motion on August 26, 2025, and took the motion under advisement.[3] The court has carefully considered the parties' written submissions and counsel's oral arguments. Based upon the analysis set forth below, the court denies Plaintiffs' motion.

**BACKGROUND**

Red Cat is a drone technology holding company specializing in the design, development, and manufacture of drones for military, government, and commercial use.[4] Teal, which is one of

---

[1] ECF No. 12.

[2] ECF No. 3.

[3] ECF No. 39.

[4] ECF No. 1 at ¶ 24.

Red Cat's largest subsidiaries, was founded by Defendant George Matus ("Mr. Matus").[5] Teal specializes in, among other things, optionally lethal, first-person view ("FPV") drones.[6] Plaintiffs are currently developing—but have not released—an FPV drone called "FANG."[7]

Red Cat acquired Teal from Mr. Matus in 2021.[8] As a condition of the acquisition, Red Cat and Mr. Matus entered into an employment agreement, through which Red Cat employed Mr. Matus as Teal's Chief Executive Officer ("CEO").[9] In December 2023, Red Cat promoted Mr. Matus to be its Chief Technology Officer ("CTO"), while he continued to hold his position as Teal's CEO.[10] Several months later, Red Cat and Mr. Matus entered into an Executive Employment Agreement.[11] In that agreement, Red Cat provided Mr. Matus with increased compensation,[12] and Mr. Matus agreed to certain provisions containing protective covenants: a non-compete provision, a non-solicitation provision, a non-disclosure provision, and a provision requiring him to return all confidential information to Red Cat upon his separation from employment.[13] In November 2024, Mr. Matus notified Plaintiffs that he was resigning from his

---

[5] *Id*. at ¶ 25.

[6] *Id*. at ¶ 84.

[7] *Id*. at ¶ 95.

[8] *Id*. at ¶¶ 27-28.

[9] *Id*. at ¶ 28.

[10] *Id*. at ¶¶ 35-36.

[11] *Id*. at ¶ 42.

[12] *Id*. at ¶¶ 43-44.

[13] *Id*. at ¶¶ 46, 48-52.

roles as Red Cat's CTO and Teal's CEO in December 2024 and was accepting the role of CTO for Defendant Vector Defense, Inc. ("Vector").[14]

Plaintiffs allege that they learned after Mr. Matus's departure from Red Cat and Teal that he had co-founded and joined Vector sometime in the spring of 2024 while he was still serving as Red Cat's CTO and Teal's CEO.[15] Plaintiffs also learned after Mr. Matus's departure from Red Cat and Teal that, despite Mr. Matus's representations to the contrary,[16] Vector is a drone company that produces drones intended for military deployment, including FPV drones, in direct competition with Plaintiffs.[17] Plaintiffs note that Vector publicly announced its FPV drone, "Hammer," for the first time on July 11, 2025.[18] Plaintiffs further contend that Mr. Matus has successfully solicited Plaintiffs' employees to leave their employment with Plaintiffs and join Vector.[19] Finally, Plaintiffs assert that Matus likely has disclosed Plaintiffs' trade secrets[20] and that he wiped his Red Cat laptop prior to his departure from Red Cat and Teal.[21]

Based upon those allegations, Plaintiffs filed this lawsuit against Mr. Matus and Vector (collectively, "Defendants"), asserting claims for misappropriation of trade secrets under federal

---

[14] *Id.* at ¶ 105.

[15] *Id.* at ¶¶ 109-10, 143.

[16] *Id.* at ¶¶ 106, 138, 165.

[17] *Id.* at ¶¶ 161, 173.

[18] *Id.* at ¶ 164.

[19] *Id.* at ¶¶ 145, 147.

[20] *Id.* at ¶ 178.

[21] *Id.* at ¶ 139.

and state law, breach of contract, breach of fiduciary duty, computer fraud/abuse under federal

and state law, tortious interference with economic relations, and fraudulent misrepresentation.[22]

Along with their complaint, Plaintiffs filed a motion for preliminary injunction, in which

they seek an order for injunctive relief: (1) precluding Defendants from using, disclosing, and/or

relying on Plaintiffs' trade secrets and confidential information; and for one year, (2) barring Mr.

Matus from working for, and collaborating with, Vector on the on the design, development,

production, marketing, and sales of any drone technology; (3) enjoining Vector from

manufacturing, marketing, distributing, contracting (including applying for military offerings),

and/or selling any Vector designed, developed, and/or marketed drones; (4) precluding Vector

from working to identify and/or build business relationships with any external entity or

individual in support of its drone design, development, marketing, and/or manufacturing efforts;

and (5) prohibiting Defendants from soliciting any of Red Cat's employees.[23] Plaintiffs motion

for preliminary injunction is before District Judge Ted Stewart.

Plaintiffs also filed the instant motion for expedited discovery "to prepare an adequate

record in anticipation of an evidentiary hearing on" their motion for preliminary injunction.[24]

Plaintiffs sought an order: (1) permitting each side to issue up to 9 interrogatories, 10 requests

for production, and 15 requests for admission on each opposing party; (2) requiring the issuance

of all expedited discovery requests on the third calendar day after the date of the order, regardless

of the day of the week upon which that day falls; (3) requiring each party to respond to expedited

---

[22] *Id*. at ¶¶ 186-350.

[23] ECF No. 2 at 7-8 of 33.

[24] ECF No. 3 at 2 of 13.

discovery requests within 14 calendar days of service; (4) permitting each side to take up to 3 depositions—which would not count toward the number of depositions that can be conducted in regular discovery—covering no more than 15 total hours of deposition time to be divided among the 3 depositions as the deposing party chooses (but with no deposition lasting more than 7 hours); (5) requiring the parties to issue all deposition notices within 7 calendar days of the parties issuing their expedited discovery requests; (6) requiring Defendants to make themselves available for in-person depositions in Salt Lake City, Utah, on any day during the 10 calendar day period after Defendants' timely provision of their responses to Plaintiffs' expedited discovery requests; and (7) setting expedited discovery to close within 28 days after the date of the order.[25] Attached to their motion for expedited discovery, Plaintiffs included their proposed discovery requests for Defendants.[26] Those discovery requests generally seek information from September 1, 2023, to the present, but some of the requests have a more limited timeframe.[27]

During oral argument on Plaintiffs' motion for expedited discovery, Plaintiffs indicated that they would agree to limit their proposed discovery requests for Mr. Matus and Vector in several ways. First, Plaintiffs agreed to limit their proposed discovery requests for Mr. Matus to: (1) interrogatories 1, 6, and 8;[28] (2) requests for production 1, 3-5, and 8;[29] and (3) requests for admission 3, 6, 10, and 13.[30] Second, Plaintiffs agreed to limit their proposed discovery requests

---

[25] *Id*. at 10-11 of 13.

[26] ECF No. 3-1.

[27] *See generally id*.

[28] *Id*. at 9, 11-12 of 71.

[29] *Id*. at 34-36 of 71.

[30] *Id*. at 56-59 of 71.

for Vector to: (1) interrogatories 5, and 8-9;[31] (2) requests for production 2-4, 7, and 9;[32] and (3) requests for admission 1, and 5-6.[33] Finally, Plaintiffs agreed to limit the timeframe for those requests to information from April 2024 to the present.

**ANALYSIS**

The court denies Plaintiffs' motion for expedited discovery because they fail to establish good cause. Generally, "[a] party may not seek discovery from any source before the parties have conferred as required by [Fed. R. Civ. P.] 26(f)."[34] However, "a court may exercise its broad discretion to alter the timing, sequence, and volume of discovery, including granting expedited discovery. The party seeking expedited discovery has the burden to show good cause for the requested departure from usual discovery procedures."[35] District courts in the Tenth Circuit consider the following factors to determine whether good cause exists to support a motion for expedited discovery: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery

---

[31] *Id*. at 23-24 of 71.

[32] *Id*. at 47-48 of 71.

[33] *Id*. at 67-69 of 71.

[34] Fed. R. Civ. P. 26(d)(1).

[35] *Am. Equip. Sys., LLC v. Chester*, No. 2:23-CV-00680-DBB-DBP, 2023 WL 8261427, at *2 (D. Utah Nov. 29, 2023) (citation modified); *see also Vivint, Inc. v. Sunrun, Inc.*, No. 2:24-CV-0034-JNP-DBP, 2024 WL 3069228, at *1 (D. Utah June 20, 2024) (same).

process the request was made."[36] "These factors are not binding, and the court has discretion on whether to authorize expedited discovery."[37] Each factor is considered in turn below.

### I.    Plaintiffs' Motion for Preliminary Injunction Is Pending.

First, the court considers whether a motion for preliminary injunction is pending. Plaintiffs' motion for preliminary injunction is pending, which weighs in favor of permitting expedited discovery. However, the court notes that "[a] pending injunction motion alone may not be enough to merit expedited discovery."[38]

### II.    Plaintiffs' Discovery Requests Are Overbroad.

The court next considers the breadth of Plaintiffs' discovery requests. Even when those discovery requests are limited as Plaintiffs proposed at oral argument, the requests are overbroad. Many of the discovery requests use omnibus terms and seek broad categories of information which, standing alone, makes them overbroad.[39] For example, all of Plaintiffs' requests for production of documents use the phrase, "[a]ny and all [c]ommunications,"[40] and seek documents in a wide range of categories. Such requests do not meet the requirement that they be

---

[36] *Am. Equip. Sys., LLC*, 2023 WL 8261427, at *2 (citation modified); *see also Vivint, Inc.*, 2024 WL 3069228, at *1 (same).

[37] *Am. Equip. Sys., LLC*, 2023 WL 8261427, at *2 (citation modified); *see also Washington v. Correia*, 546 F. App'x 786, 787 (10th Cir. 2013) (recognizing that "[i]t [is] well within the court's discretion to decline to authorize expedited discovery").

[38] *Am. Equip. Sys., LLC*, 2023 WL 8261427, at *2.

[39] *Schmelzer v. IHC Health Servs., Inc.*, No. 2:19-CV-00965-TS-JCB, 2022 WL 16646456, at *6 & n.54 (D. Utah Feb. 10, 2022) (citing numerous cases "condemning the use of . . . omnibus terms and broad categories of information" in discovery requests), *objections overruled*, No. 2:19-CV-965-TS, 2022 WL 1224976 (D. Utah Apr. 26, 2022).

[40] ECF No. 3-1 at 34-36, 47-48 of 71.

narrowly tailored to the issues presented by the motion for preliminary injunction.[41] Thus, this factor weighs heavily against permitting expedited discovery.

### III.    Plaintiffs Fail to Show a Legitimate Purpose for Requesting Expedited Discovery.

Next, the court addresses Plaintiffs' purpose for requesting expedited discovery. Plaintiffs fail to show a legitimate purpose for their request. Although Plaintiffs seek early, expedited discovery, the requirements of Fed. R. Civ. P. 26(b)(1) apply, which require the court to consider both the relevance and proportionality of Plaintiffs' discovery requests. To begin with, many of Plaintiffs' discovery requests do not seek information that is relevant to the issues raised by their motion for preliminary injunction. For example, nearly all of Plaintiffs' discovery requests seek information about past conduct, which is not relevant to Plaintiffs' pending request for injunctive relief.[42] Additionally, several of Plaintiffs' discovery requests ask for information relating to

---

[41] *Wailes v. Jefferson Cnty. Pub. Schs.*, No. 24-CV-02439-RMR, 2024 WL 4433942, at *1 (D. Colo. Oct. 6, 2024) (providing that expedited discovery "should be narrowly tailored to seek information necessary to support the application for . . . preliminary relief"); *PPEX, LLC v. Buttonwood, Inc.*, No. 21-CV-53-F, 2021 WL 7210184, at *1-2 (D. Wyo. July 28, 2021) (stating that "[t]he moving party's requests should be limited and reasonably tailored to the 'good cause' circumstance for which expedited discovery is sought" and that "[t]ypically, a premature discovery request must be limited and narrowly tailored"); *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 420 (D. Colo. 2003) (stating that when considering the good-cause standard for expedited discovery, "the court should consider the scope of the requested discovery").

[42] *Schrier v. Univ. Of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) ("The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance."); *Qwest Commc'ns Int'l, Inc.*, 213 F.R.D. at 421 ("Preliminary injunctive relief cannot remedy harm that already has occurred. Thus, the moving party must come forward with evidence showing irreparable injury may occur *pendente lite* if the preliminary injunction is not granted. Much of the expedited discovery that [the plaintiff] seeks addresses conduct that has already occurred, which would have little, if any, bearing on irreparable injuries that may occur *pendente lite*." (citation modified)).

speculative harm, and such harm cannot form the basis for a preliminary injunction.[43] Indeed, at oral argument, Plaintiffs' counsel indicated that expedited discovery is necessary to permit Plaintiffs to determine *whether* Defendants are developing or producing any drones that compete with Plaintiffs' drones. In other words, Plaintiffs are seeking information not to support an existing claim for relief but to find information about whether they can make a claim. That is not what discovery in general is for, much less narrowly tailored, expedited discovery.[44] Therefore, this factor weighs heavily against allowing expedited discovery.

## IV.    Defendants Would Be Burdened by Responding to Plaintiffs' Discovery Requests.

The court next considers the burden that would be imposed upon Defendants to comply with Plaintiffs' discovery requests. Even if Plaintiffs' discovery requests are limited as they have proposed, responding to the requests would impose a burden on Defendants given the tight deadlines and short discovery period Plaintiffs have proposed. Additionally, permitting Plaintiffs' requested depositions would impose a burden on Defendants. Under Plaintiffs' proposal, Defendants would be required to produce deposition witnesses in a very short period of time. Further, Mr. Matus would likely be subject to two depositions—one during the expedited discovery period and one during the standard discovery period. Given the relevance problem

---

[43] *Schrier*, 427 F.3d at 1267 ("To constitute irreparable harm, an injury must be certain, great, actual, and not theoretical." (citation modified)).

[44] *Am. Equip. Sys., LLC*, 2023 WL 8261427, at *3 ("Although the scope of discovery under the federal rules is broad, parties may not engage in a fishing expedition attempting to obtain evidence to support their claims or defenses. Discovery should center on the issues raised by the motion for preliminary injunction." (citation modified)); *Let Them Play MN v. Walz*, 517 F. Supp. 3d 870, 889 (D. Minn. 2021) ("The purpose of expedited discovery is to allow a party to obtain *specific, limited, and identifiable* pieces of information . . . ." (emphasis added)).

discussed above, "the importance of the discovery in resolving the issues"[45] is low, which poses a proportionality problem under Fed. R .Civ. P. 26(b)(1). Therefore, this factor also militates against expedited discovery.

**V.    Plaintiffs Moved for Expedited Discovery Promptly.**

Finally, the court considers the timing of Plaintiffs' motion for expedited discovery. Given that the motion was filed the same day as Plaintiffs' complaint, this factor is neutral.[46]

### CONCLUSION AND ORDER

As shown above, the second, third, and fourth factors weigh against permitting expedited discovery, and the court concludes that those factors control here. Accordingly, the court concludes that Plaintiffs fail to establish good cause to justify expedited discovery. Therefore, the court DENIES Plaintiffs' motion for expedited discovery.[47]

IT IS SO ORDERED.

DATED this 2nd day of September 2025.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[45] Fed. R. Civ. P. 26(b)(1).

[46] *Am. Equip. Sys., LLC*, 2023 WL 8261427, at *6 (concluding that the timing factor was "neutral" where the plaintiff's motion for expedited discovery was filed the same day as the complaint).

[47] ECF No. 3.